I realize we have 20 minutes. It's my intention to take half of that 10 minutes, but I will sit down before him through the 10 minutes and reserve a minute or two for rebuttal. In lots of cases, the parties don't agree about anything, and here we have some important points of agreement. Both parties agree that under United States v. Skilling, the reach of the Honest Services Statute 815 U.S.C. 1346 is limited to bribery and kickback schemes. The government agrees with the defense that the instructions in this case allowed the jury, and I'm quoting the government's supplemental brief, allowed the jury to convict on an impermissible basis. As far as Mr. Garrido was concerned, that was an aiding and abetting theory that he aided and abetted Mr. Robles in having an undisclosed conflict of interest. So we're all in agreement that the jury had before the basis to convict, which was unconstitutional. The government concedes constitutional error. It's obviously constitutional error to allow the jury to convict on a theory of liability which is not illegal under the law. I thought this was just statutory error, just legal error. They interpreted the statute. That is, the Supreme Court interpreted the statute to exclude certain conduct. But the Supreme Court, in the Skilling case, alleged that, stated that Skilling's convictions were flawed because this impermissible theory was before them, and cited Yates v. United States for the proposition that constitutional error occurs when the jury is instructed on alternate theories of guilt and returns a general verdict that may rest on a legally invalid theory. And, in fact, the government cited that same portion of Skilling in its supplemental brief of page 24 at page 15. So Your Honor, of course, is correct that Skilling itself involved the question of statutory interpretation and not narrowing the statute, although based on constitutional due process concerns. But Skilling stands for the proposition that if you submit to the jury a theory of liability which is outside the statute, that is, one, allows someone to be convicted on conduct which is not criminal, that that, the presentation of that alternative theory constitutes constitutional error that would have to be found harmless beyond a reasonable doubt in which to submit, Your Honor. And in order to, the harmlessness question really consists of two parts. The first is, can it be said that the jury, in fact, no member of the jury, returned a conviction based on conflict of interest? Because if they did return a verdict, even one based on conflict of interest, then the error, the Skilling error, affected the verdict. But alternately, the government would have to not only convince this Court that not only did no juror return on this invalid conflict of interest theory, but they all returned a verdict on a valid theory on which the jury had been properly instructed. And its task gets impossible at that point, because the lawyer who presented the case to the jury said to the district court, and I quote, The government's theory was that the defendant Robles failed to act as a prudent fiduciary by running the city as his own personal business, financially benefiting at the city's expense and creating conflicts of interest, and then failing to disclose them. And this is the government's trial attorney. Bribery was not the charged crime, and neither a quid pro quo nor any element of bribery was an element of the charged offense. So the government is in the very difficult position here of saying to you, I realize that my trial attorney below said that he presented a case to this jury that did not involve bribery and did not involve any element of bribery, and therefore, the trial court was not required to instruct on the elements of bribery. But we want you as an appellate court to reject the position of the district court, of the trial attorney of the district court, which agreed that this was a conflict of interest case, and in fact, reject our own position in our opening brief where we told you that the district court was correct in finding that this was exclusively a conflict of interest case. The problem that they have is that even if you could make that remarkable lead, then they would have to turn to you and say, but of course, the jury did convict on a valid theory of bribery, and it was instructed on that when the district court said, I didn't instruct on bribery because this wasn't a bribery case, and the lawyer for the government below said, you didn't have to instruct on bribery, and of course, you did not. You did not instruct on any element of bribery. And the district court, in ruling on the new trial motion, said, well, because this is a conflict of interest case, I'm not going to even touch your claim, Mr. Garrido, that there wasn't enough evidence of bribery on your part or your claim of instructional error because it's all forgiven because it's a conflict of interest case. And when we raised on appeal in our opening brief for Mr. Garrido the argument there wasn't enough evidence of bribery and there wasn't instructions on bribery, the government's reply was, well, we're not even going to talk about that because it's a conflict of interest case that the district court correctly held. So obviously, in the face of the district court's finding and the position of the AUSA below, it's impossible to find that conflict of interest wasn't a theory that influenced the verdict. It wasn't the theory that influenced the verdict. And it would be also impossible to find that there was a valid bribery theory presented to the jury. The government is really saying, look, we blew this below. We presented it as a conflict of interest case. There was no bribery instruction. But we want you as an appellate court to say, look, I mean, if you had presented a bribery theory, you would have gotten a valid conviction. And that's because there was evidence to support bribery. Right. And the simple rejoinder to that is United States v. McCormick in which the United States Supreme Court said you may never affirm a conviction on a theory and a set of instructions that weren't presented to the jury. Let me ask you, I have a couple of questions for you. Sure. So it seems like we're on plain error review. Is that correct? The answer to that, Your Honor, is it's not plain error review, but I'm happy to live with plain error review. So do you want the why I think it's not and then the answer? Either way. Okay. The reason I think it's not plain error review is the case, and I apologize for not citing this, I'll submit it to the court. The United States v. Manning, this court's decision in 56 Fed Third 1188, 1195, 1196. What the court found in that case is that, hey, this defendant did not raise a statute of limitations claim at trial. So normally he'd have waived it. He'd be under the plain error standard. But the statute of limitations claim only arose when a particular statute, another statute in the case statute, I guess, was invalidated. So since the legal grounds to raise this did not arise until the trial was over, we're not going to hold that the defendant failed to preserve this point by raising it at trial. What was preserved, I argued to the district court following trial, hey, this should have been a bribery case. It wasn't. It was presented as a conflict of interest case. That's a bad theory. Now, I didn't argue an unskilling grounds. I said it wasn't adequately charged. And the court said, no, I'm rejecting your bribery argument, the one the government is now trying to make. A conflict of interest is fine, and I'll sustain the conviction on that basis. So there was an objection to the conflict of interest theory, not unskilling grounds. But any objection would have been completely futile unskilling grounds, because since 1980, this court in the Bohanna case, as they decided by the government, has held the conflict of interest can support an honest services conviction. So the trial court would have said, that's a silly argument to be making to me, Mr. Reardon. This court, if I had come into this court before skilling, could have said, we can't pay attention to you. Perhaps you could argue for an en banc panel. But until skilling was decided, any objection to a conflict of interest theory on skilling grounds would have been futile in any district court in the Ninth Circuit. That said, the government concedes that the error here was plain. It concedes that it was constitutional in nature. It has to then bear the burden of saying, but it didn't affect the substantial rights of the defendant. In the Al-Farahim case, this court held that it was plain error not to give an instruction omitting even one element of an offense, because that could allow the person to be convicted on evidence which didn't establish that it was really a crime. And in this case, of course, we've got a theory presented which everyone agrees had none of the elements required to convict of honest services fraud. That is, conflict of interest. Is that simply not within the purview of the statute? So I would submit that we make it under the plain error standard rather handily, Your Honor. I also submit that because skilling was decided after the case was decided, this case was considered a skilling claim. Any objection would have been futile. I have one short question for you. What relief are you asking for? Well, Your Honor, we're simply asking for a reversal. To be remanded for a new trial? Remanded for a new trial. There may be complicated questions there about whether the government can proceed and give them the nature of the indictment and so forth, but I think those are for another day. Okay. I haven't presented them to this court. Thank you very much. On the fourth point of plain error review, do you think that it affects the fairness of the proceeding that he was tried on the wrong ferry? Well, I guess, Your Honor, the question would be this. I mean, if we're proceeding under plain error, okay, and even if this was objected to and we have to reverse it because he didn't get a jury verdict on the only theory permissible under skilling, which would be bribery, can we as a court say, yeah, okay, it was an invalid conviction, but, you know, we've looked at all of the evidence and we find that even if the jury was influenced by the constitutional error, we think he would have been convicted had he been properly charged and convicted. Your Honor, I would just admit that if someone has been convicted based on conduct which is not a crime, that does affect the substantial rights. It is a miscarriage of justice and an appellate court couldn't say, but in our opinion, he would have been convicted at a fair trial. Therefore, the fourth element is not present. If you've been convicted on alleged conduct which is not a crime, I would say that that's of the apparent strength of the evidence. This court didn't get a chance to see the witnesses, and it's just got to go back to being recharged again. Well, Mr. Redden, can I say one thing to Mr. Redden? I've heard you argue criminal cases over 20 years, and it's always a pleasure to hear your arguments because they are very clear and very well put. I want to thank you for how you serve the court. Thank you very much, Your Honor. I regret, in a sense, to say that the first argument I presented here was actually in 1976, so it's been all of 34 years, Your Honor. Well, that's what I'm going to say. Thank you very much. I'm sorry. What count is the government looking to as involving bribery with your client? Well, let me see if I'm understanding that question correctly, which is that I think the government has the one count, count 22. I think the government has conceded error at 27. I don't think it's trying to defend that, so there's four remaining counts. What counts are we looking at? 22, 23, 24, and 25. And I think the government will argue that on 22, the conduct underlying 22 was also alleged as a bribery count, essentially, against Mr. Robles, so that this court could sustain 22 on a bribery theory, even if it couldn't the others. I'll leave it to Mr. Kiley to deal with that argument on its merits. All I can say is that the jury was never instructed that it would have to find the elements of bribery as to the conduct in 22, as far as Mr. Garrido is concerned. Well, how about counts 33 through 37? Those are exclusively for Mr. Robles. Robles. Yes. And I'll be happy to turn it over to you. And the government's argument is that those are the bribery counts? Right. But I shouldn't touch that, because I admit I'm not schooled on it, Your Honor. No, you don't have to. Mr. Kiley, sorry. You don't have to worry about it. I'm just asking you a few questions, that's all. Thank you. Sure. Good afternoon. I'm Tom Kiley, and I represent Albert Robles. And it's only my second time before the court. The last time was on this case, Flosca Center. And I, as Mr. Reardon suggests, I have a number of charges, a number of counts against Mr. Robles. Some of them are tainted by the honor services theory, clearly. The erroneous honor services conflict interest theory. And others that I'm going to argue with the government about whether they were tainted, whether there was a prejudicial spillover. And those do relate to the counts that Your Honor was alluding to involving the bribery counts of 33 to 37 that are under honor services, that are not under honor services, that are under program bribery. I do want to start with Skilling, though. Let me ask you a question. Was this indictment read to the jury? I do not have the luxury of knowing that. I believe a redacted version went into the jury, but I do not know that, Your Honor. I was not trial counsel, and I do not know it. Because you have an indictment here that is very long. It's, in a sense, an opening statement, presents evidence, and it's a closing argument. And it's 33 pages long. Quite likely, and I would characterize it as argumentative as well, Your Honor. But the judge told him that it was not to be treated, told the jury it was not to be treated as evidence. He did. I simply can't answer the fact. No, no, no. I want to start with Skilling as well, because I think Skilling has some very important references to cases that I think are important for your decision on 666 as well as on the honor services. When I appeared before you the last time, I suggested that the doctrine of judicial estoppel was going to apply. And I thought that the doctrine of judicial estoppel was going to apply because the government was telling you things in this court about what honor services meant that were 180 degrees the opposite of what they were telling the United States Supreme Court. They related directly to the questions that we presented in our brief, whether the individual, in this case Mr. Robles, had to be violating his own official acts, committing improper acts with respect to his own duties, which was the principal trust of a direct case. Duties related to his role as treasurer. Correct. He was also deputy city manager. No arguments were raised with respect to that. And he was precluded in that capacity from acting with respect to the city's contracts and finances. He was ministerial. He wrote checks. The cases, what the Supreme Court said in order to avoid again stretching the honor services fraud out of shape was that the guidance would be provided by reference to three other statutes, the bribery statutes and the kickback statute, and a series of cases. And they cited to us, to the world, Gannon, Kemp and Whitfield. And Gannon, Kemp and Whitfield, Gannon and Whitfield in particular, involved both 666 and honor services. And the thing that emerges most clearly from the cases is the requirement of quid pro quo. Quid pro quo is the dominant theme of the discussion in Judge Justice Sotomayor's Gannon decision. She talks about the need for a quid pro quo with respect to all of the statutes that are under discussion in that case. And the question of quid pro quo becomes very relevant in this circuit because of the holding of the court in Kincaid-Chauncey that when you are dealing with the bribery theory of honor services, that a quid pro quo requirement is an essential element. So the requirement of quid pro quo is essential for a prosecution under any of these theories, and it was that very issue that caused the court, caused Judge Wilson in this case, to consider whether or not this case was being presented on a conflict of interest for a bribery theory. And he rejected the notion that it was a bribery theory, said it was a conflict of interest theory, thus avoiding the very question, which is whether there was an adequate instruction on the elements of bribery involving, in particular, a quid pro quo. Well, that all occurred at the end. That occurred in the motion for a new trial, right? Yes, it did. Suppose the government had started out from the get-go and said, Your Honor, this is not only honor services failure to disclose a conflict of interest, but it's also bribery. It's also quid pro quo, and we can point to evidence of quid pro quo here. Would that have flown at the very beginning? Would that have worked? There's no reason that the government cannot proceed on alternate theories. When one proceeds on alternate theories, though, and secures a conviction on a general verdict that is based in part or could be based upon an improper theory, as Mr. Reardon has told you, the Supreme Court in Yates and in other cases has said that will not work. So they could have done it, but they would still be here and would still be arguing about harmless error. Let me ask you, is it fair to say that they presented evidence of quid pro quo that would have supported a conviction? Certainly the thrust of their argument now is that the evidence was properly admissible that could have proved a bribe, but that there was not a proper instruction with respect to that evidence. Was there a bribery instruction? Limited to bribery? There is a 666 instruction there, but it is so infected by the other instructions that I can't say that it really stands alone. The elements of the offense are described. But the indictment on 666, do you read that? Is the word bribery stated? The word bribe is used on occasion, and the word bribe was used by Judge Wilson in his instructions. On the services, he used for example bribery kickbacks, but the focus was on the conflict of interest, and all of that discussion was followed with respect to California law and the burdens that California law imposed. So the reality I think, Justice Payes, is that the government could have tried to present a bribery case, but they really didn't. And what the Supreme Court has told us is we should be judging these things on what actually occurred, and not what a hypothetical jury could have done, not what a hypothetical case could have been like, but what actually occurred in this case. In this case, my client's counsel consistently asked for an instruction, a theory of the defense instruction, that went to this question of what is permissible in the campaign contribution context. My client's 666 violations literally involved things that the government has characterized as in-kind contributions or contributions, and the judge himself said were contributions. Despite McCormick, however, he never gave the kind of explicit quid pro quo instruction that would be required when you're dealing with a campaign in the campaign context matter, whether it's in the Hobbs Act context, whether it's in the 666 context, whether it's in any context. The combination of the Kincaid-Chauncey requirements that quid pro quo be part of a case involving the bribery theory, the Gannon-Whitfield decisions, which are very explicit with the requirement for quid pro quo, the failure of this judge to give a quid pro quo instruction for the theory of the defense instruction that was requested on behalf of Mr. Robles is fatal with respect to this case. I argue that there has been prejudicial spillover, but when you look for the bribery instruction, what you're going to see is it's really merged into a general discussion of California law, which the judge himself acknowledged was erroneous. The judge, in the post-hearing motive decision that you rendered, states explicitly that the jury needed to hear the definition of contribution under California law, because without it, they could not properly determine whether or not items not characterized as contributions in the indictment were contributions. A presumption that things given to elected officials are contributions and do not create a conflict of interest. The judge said that was not plain error, that he could not correct it, but you could. We assert that it was plain error, but the definition of contribution emerges plainly from the face of the California statute. If the judge was going to instruct with respect to the California statutes and not focus on the federal crimes with which Mr. Robles was charged, then he had to do it completely. The combination of the two is what we've been wanting to punch in this particular case. Mr. Robles has served... What is it that you're asking for? I would like to ask for my client's immediate release. He has served on the 28th of this month. He will have served four years. There's no question that the conviction on the honest services needs to be reversed. The money laundering goes with it because it was predicated expressly on deprivation of honest services. A remand for a new trial on those matters as on the 666 is permissible and appropriate. Were he willing to decide that we're remanding on the new trial on the honest services, the reality is that the guidelines would amount to a 15 to 21-month sentence on the 666 charges, given the minimal amount of the $22,000 worth of contributions and gifts that the judge or the law would make the contributions, and therefore he should be released. So remand, release in the meantime. If I have any time left, I'll reserve. A remand... Reverse and remand. For a new trial? For a new trial.  On bribery and kickbacks? Yes. All right. Thank you. Thank you. May it please the Court, Ilana Artson on behalf of the United States. And I'd like to begin with the 666 counts, which are the bribery counts. And whether stealing has any effect on those counts. Which count, now? The counts under 18 U.S.C. section 666. Oh, okay. The bribery counts. All right. They only relate to Mr. Robles. They only relate to Mr. Robles. Mr. Robles, yeah. But those counts are not in any way affected by stealing, because stealing did not in any way alter the elements of a 666 offense. He's just arguing that they're tainted, though, because of the way in which the case was tried. But... That's all. No, what he's trying to argue is that the jury was not properly instructed. But the jury was properly instructed on the elements of 666. They were instructed that 666 requires that the defendant accepted something of value with the intent to be influenced or rewarded in connection with a transaction. What page are you looking at? Your Honor, the jury instruction with respect to 666 is at GER, page 534. And the jury was charged that it had to find that defendant Robles corruptly solicited, demanded, accepted, or agreed to accept something of value with the intent to be influenced or rewarded, and to influence or reward in connection with any business transaction or series of transactions of the city of Southgate having a value of $5,000 or more. And, of course, that transaction was the trash contract. Those are the elements of 666. Nothing in stealing altered those elements. So the jury was correctly instructed on the elements of 666. And what was the money? Wasn't that the contribution? Wasn't he asking for political contributions? Whether it was a political contribution, whether it was a campaign contribution, doesn't matter. It's a thing of value. And if he accepted it corruptly with the intent to be influenced or rewarded in connection with the trash contract, he has committed a violation of section 666 of the bribery statute in 666. So it just wasn't a simple political contribution? Because the jury was instructed and had to find that he accepted that with the intent to be influenced or rewarded. Well, I mean, you know, when you see these instructions, you know, we were both district court judges for a long time. And, I mean, you think you'd have an instruction charged and count this, committing the crime of bribery. You know, the elements of bribery are, you go through it. It's simple. You tell them what it is. That's exactly what it is. Where is that? Show me where that is. It is at page 533 and 534 of the government's excerpt of records in the jury charge where the jury was instructed on the elements of section 666. Read it. Does it say, I now instruct you on the elements of bribery? Defendant Robles is charged in counts 33 through 37 with corruptly soliciting, demanding, accepting, or agreeing to accept, and giving or agreeing to give bribes concerning programs receiving federal funds in violation of Title 18 United States Code section 666. So it's in the instructions. It's in the government's excerpt of records at page 533. Those were the instructions on the bribery challenge. What else does it say? Bribery has been defined by the Supreme Court as an intent to influence. The dispute that we're having here is that section 666 covers bribery and gratuity. It covers an intent to be influenced or rewarded, and that may be broader than the bribery that's covered on a services fraud. But in the government, the government's point is that with respect to 666, that instruction was correct and nothing about scamming. My question was not that the instruction wasn't correct. I mean, I see it right here. I'm reading it. I've read it. I was following you as you read it. His point, though, is you should have also instructed that all this was was a political contribution, and a political contribution isn't a crime. So I didn't intend. If I understand his argument, how could the jury properly evaluate this instruction without having this counter-instruction? My theory of the case, which is all these were political contributions. Because Robles is confusing two things. He's confusing an instruction that he requested with respect to nondisclosure. With respect to whether the defendant was required to report on his Form 700 certain gifts that were received, and that had to do with Counts 22 and 27. Count 27 is not in the picture. We've conceded that was insufficient on that ground. But with respect to bribery, whether it was a gift or a campaign contribution, if it was taken with the intent to be influenced, it's a bribe and it violates Section 666, and it violates honest services fraud. That gift versus contribution was only relevant to the nondisclosure, only relevant with respect to the count charged at Count 22. Because what was charged there was the nondisclosure of a gift, and Robles pretended that that was a campaign contribution. Should these instructions include on the bribery the concept of a quid pro quo? Well, a quid pro quo is accepting something with intent to be influenced. That was in the Section 666 Counts. The jury was also— Well, can I interrupt? How can he be influenced if he has no control over this particular area? If he were a maintenance man being paid to do something, I don't think you'd be saying he had control over the contract here at the issue. Does he have any more control over the contract in an official way? Your Honor, we've cited a number of cases in our answering brief that the defendant doesn't have to accept a bribe in connection with something that is within his specific authority, as long as he accepts it with the intent to influence that contract, and that's exactly what Robles did. So your position is that anybody could be convicted of bribery even though they had no official position? Well, first of all, Your Honor, the defendant— Is that your position? No, Your Honor. It's not. I think it goes farther than our position. This defendant did have the intent by virtue of his citywide elected position to— How could he possibly have it? He's the city treasurer. He's got certain mandatory duties. But he's a citywide elected official, and by virtue of the powers that he has, which carries over the fiduciary duty, he had the ability to and did, in fact, influence that contract. That's what was shown here. You know, I think the government has mistaken the theory. What you're dealing with is an unelected boss. The powers that he had, he had because he was the boss. It wasn't because he was the city treasurer. Now, undoubtedly, he seems to have misused them, but I wonder if that really comes within the government's theory. Well, Your Honor, I would respectfully disagree because this was a case about kickbacks. With the exception of Count 22, all of the counts charged in this case related to kickbacks that Robles or Garrido received. And Robles, as the city treasurer, signed the check that went to each of these contractors, knowing that those contracts were based on kickbacks that he had demanded from each of those contractors as a condition of doing business with the city. That was a breach of his fiduciary duty within his official position. And we've cited a legion of cases to support that. So, not only did he have the power and the influence, but he signed these checks within his fiduciary duty and within his official role. And I would submit, Your Honor, that's a jury question. But he couldn't have signed these checks without the city council authorizing it, correct? That's correct. But, again, this was a jury question. The defense was I was just acting as a power broker. And that argument was made to the jury. The jury rejected it as it had a right to do. The question here is … Well, if the jury rejects something under clear instructions, that's one thing. But you've got, you know, I mean, I read all this stuff here. And who prepared these instructions? All the parties had a number of conferences with the court to prepare these instructions. I didn't ask that. Who prepared them? Who submitted these instructions? Did the government submit them? There were a number of instructions that were jointly submitted. There were some instructions that were created by the court. There were some instructions that each party submitted separately. The vast majority of the instructions, including the bribery instruction for Section 666, was jointly submitted by the parties and given with no objection. What is important in this case, Your Honor, is how would this case try … Why would you get the defense people, you know, they submit it. We have no objection. When, you know, they're confusing, they're lengthy, they're tied in with this honest services, that concept too. I mean, how is this any different from someone who's a lobbyist and gets paid to influence an outcome? You see, I'll tell you, this is what really bothers me about this. Here you've got an indictment. It goes on for page after page after page. And you're laying out the law, and you're putting in all the facts in the indictment, and it goes on and on. It's almost like it instructs the jury on the statute, and it lays out all the facts here that are going to go into evidence. And it's sort of tantamount to an opening statement and a closing argument. Now, why can't the government just come up with an indictment that's just a plain statement of what the charge is? You don't need all this stuff, do you? Why was all this necessary? Because despite this, the defense still claimed they didn't have notice of what they were charged with. And that's the purpose of an indictment. But I would submit that this indictment can't tell you that. Well, you know, if they want that notice, then they can come in on a bill of particulars and get that, get it that way. I mean, most of the time at these trials, and I did this work, it seemed like a long time then, but it's not so long now, for 12 years. And I wouldn't read an indictment like this to the jury. Your Honor, my recollection is I don't believe the indictment was read to the jury. Well, did the indictment go to the jury? That I don't know. It was redacted a month ago. I am not sure from the record. I can try to go back and check. I don't know for sure, but I don't believe it was actually read to the jury on the record. So you're telling me that this indictment was just a way of telling the defendants what they were being charged with? Yes, but that's the purpose of an indictment. It's to provide notice to the defendants. Why couldn't you just have issued a separate document to them? Your Honor, the question is, looking at this indictment, what did it charge? You know, Mr. Garrido's counsel mentioned areas that we agree in. One area where I agree with Mr. Robles is that this court has to determine the issues in this case, which are whether the indictment charged an offense under skilling, and whether there was trial error that requires reversal. It has to decide that based on what happened at trial. What did the indictment charge? What was the jury instructed? And how did the jury— Well, I'm just saying, you know, the problem here is that, to my mind anyway, and I wasn't there at the trial, that the government did not present a clear, clean-cut case of what was involved here. Well, I would respectfully disagree. Well, I know you can have whatever respect you want and disagree as much as you want, but I'm just telling you, if I were a trial judge, I wouldn't use—I wouldn't probably entertain a motion to dismiss an indictment like this. Your Honor, in closing, the position and the theory of the government— You do understand what I'm saying. You know, you had these counts. You can just set out a clean, clear indictment, not a big speech that goes on and on and on and on. I don't know why—is this the way it's done now, all the time? Your Honor, in complex fraud cases, typically we do have a detailed indictment to provide notice to the defense of what they're going to have to defend against. They're complex because the government makes them complex. You can just put out the essential elements, and then you put your case on, and then the jury gets a basic, bare-bones set of instructions, and then you just argue. Not with—I don't know. Anyway, that's the way I look at it. Can I add in here, if you read the indictment, at least with respect, putting aside the 666 for a moment, if you read the indictment, it's an honest services charge against Robles and Garrido. It's based on a theory of failure to disclose. Your Honor, I think we need to remember what happened— Wait a minute. I'll tell you, I've only looked at excerpts of the transcript of the trial. Then if you go to the closing statements of the prosecutor at the opening part of it, and the closing rebuttal part of it, it's pretty clear, at least to me as I read his argument, that this is an honest services charges based on a failure to disclose a conflict of interest. At least that's the way I read it. As I was discussing earlier, it could have been tried on a theory of a bribery or kickback with respect to honest services, but that's not the way it was tried. It's really hard. It's really difficult for the government to stand up here and say, yes, that's the way it was tried. And I'm not even going to talk about judicial stop all, but when you stood up in front of the district court judge and argued it was honest services based on failure to disclose, which is really the way it was, you might as well just say it like it happened. It's the theory. It's the approach the prosecutors took at that time, and it was reasonable. There's no question about it. The law has changed significantly, and we have to deal with it. Your Honor, the argument that was made during the post-trial litigation was made only with respect to the trash contract, and that's because Garrido was the only one who raised that claim, and Garrido was only charged in the trash contract. So the government never made any representation, and the district court never made any findings concerning the counts that Robles was charged with alone. But if you look at the closing argument and you look at the instructions, especially when you look at the instructions on honest services, it's all about failure to disclose a conflict of interest. Which was a bribe or kickback, and it's not about... Where did it say in those counts, in these instructions, what you just said? Where did it say? I want you to line. I want page and I want line. Okay. On the GDR 529, describing what is the breach of... Hold on, hold on, hold on. Hold on. The GDR, what's... It's at page 529 of the government's executive record, when the court instructed on the duty of honest services... What are you looking at? The instructions? I'm looking at the instructions. I don't have all that stuff. This is what I got here. I'm looking at the instructions. You know, this is what I got right here. And so you're looking at the instructions. Honest services fraud. And what page are the instructions? And it's at page 529 of the government's executive record. It's page 1925 of the transcript. Beginning at line 19, public officials and public employees inherently owe a duty to the public to act in the public's best interest. If instead the official acts or makes a decision based on the official's own personal interest, such as accepting a bribe, taking a kickback, or receiving a benefit from an undisclosed conflict of interest, the official has to... Now, where do the instructions... I read that. All right, I read that. Now, it's the only place within those series of instructions that even mention the word bribe. All the others, if you read all the rest of the instructions, you know, as Judge Ferguson was pointing out or Judge Noonan was pointing out, they all talk about state law, the law under the local city, the city ordinances and whatnot, about failure to disclose and what the duty is. And there is no place in there where there's any attempt to define bribe or kickback and to lay out that concept and how it further relates to honest services. Because the defendants didn't request it. But that doesn't mean that this case was not argued or submitted or tried on all three theories. The government's closing argument was replete with references to bribery, to kickback, and to the pay to play. You know, the government argued this was about money for city action. The government argued that the witness from Somos, the sewer repair contractor, said Robles even told him his philosophy was Mordida, which is Spanish slang for bribery. The government argued, what did Robles demand in return for, you know, these payments? He told Somos, hire these people and you don't get the contract. He demanded half of Somos' Espinosa share of the Somos contract. He was trading city action for money. That's bribery. That's the definition of bribery and kickback. Similarly, that he told Parking Company of America that they could have the contract in return for hiring Espinosa. That's the quid pro quo. That's bribery. That's kickback. The government went on to say, you know, refer to the instructions. These instructions that I just quoted you, they were repeated in the government's closing argument. And the rebuttal concluded saying this was a pay to play tale. This was clearly a case that went to the jury on all of those theories, bribery, kickback, and nondisclosure. The other point that is important to remember is. And not honest, and it went to them on the basis of dishonest services. Correct. I mean, that's what the whole thing was about.  These guys are a bunch of crooks. They're public officials. And they had a conflict of interest. They were doing these bad things. But the whole backbone of it was depriving the public of their honest services. And they're not disclosing their conflicts. The conflicts being bribes and kickbacks. That's not what the instructions say, though. That's not the way it was laid out in the instructions. And Skilling hadn't come down at the time. I don't mean to be dumping on the prosecutors who did this. They were following the laws that existed. It's changed. Significantly. And we can see that the instructions were erroneous. But like every other situation where there's an erroneous instruction, it's this court's job to look at the record and decide, based on the way that the evidence was presented and the case was argued, whether that was plain error. And we have, I think, gone through each count and gone through all of the evidence in great detail and explained that, within the meaning of Skilling, there is no way that the jury could have ---- So we have to clean up the mess. Is that what you're saying? Your Honor, it frequently happens that ---- They want to go back for another trial. What's wrong with that? Because they're not entitled to another trial based on an argument that was never raised if there's no plain error. If the jury ---- But the whole trial proceeded on the basis of honest services. And honest services is a valid theory. And the question is, on this record, is it clear that the jury could not have convicted on the invalid nondisclosure theory alone? And the reason it's clear is ---- Well, we don't know. Well, we do know. I mean, you've got all these long instructions. They go on and on and on. Did these instructions go into the jury room? Did they? I don't know if the instructions went to the jury room. Well, you should know that. I mean, if you look in the clerk's minutes, it'll say whether the instructions were sent to the jury. You know, the minute order says that. I can go back and look, Your Honor. But the final point that I'd like to leave you with is, you know, where Skilling drew the line in honest services. And this is important because in determining that the nondisclosure sort of branch would no longer fall under 1346, the government argued that McNally itself was a nondisclosure case, that that was the theory of the government in McNally, and therefore you should find nondisclosure to be within 1346. And the Supreme Court rejected that by saying, yes, it argued that there was a nondisclosure, but that was a classic kickback scheme. And so we're going to find that that falls within the core bribery and kickback conduct. And that's what we have here. What we have here is not the failure to disclose some unrelated conflict of interest. It's the failure to disclose the bribes that Robles received and with respect to most of the counts, the kickbacks that he demanded and that Garrido received. Those types of conducts fall within the core conduct, the core bribery and kickback conduct that is within section 1342. If this was the whole theory of the government's case then, why was it necessary to instruct the jury on California Government Code section 81001, 87100, 87103, 82029? It just goes on, 87202, 87203, 87204. It goes on, 87210, 82028. Then it gets into the Southgate City Ordinance. It just goes on and on and on. So you don't really know. And then you've got general verdicts, huh? Why didn't they ask to send in specific verdicts on this count, that count, this count, that count? As to what the theory of liability is? Because generally the jury doesn't have to give a special verdict on its theory of liability. That issue arose now because Gillen changed the law. And we agree with Judge Paez. But the fact that it changed the law doesn't necessarily entitle the defendants to a new trial if that error did not prejudice the defendants. And on this evidence and on this record we submit that it didn't because the jury has two very distinct versions of the facts that they were asked to choose between. They were asked to choose between, are these kickbacks, or as Robles contended, were these, you know, something that I had nothing to do with? These were actions that the contractors took on their own. This was an action that Espinoza took on his own that I had nothing to do with. And simply with respect to Burrito, it wasn't whether we had sort of a quid pro quo versus a gratuity. It was what was the purpose of this $3.5 million contract? Was it a kickback or was it a legitimate recycling deal that we were engaged in, which is something that was never mentioned in the contract? The contract says it's for lobbying purposes. So, I mean, you also, you know, could say that, I mean, there's a lot of evidence here. And the jury could have just said, these are all bad guys. And so just hand me that general verdict sheet and we'll just check them off. You're really, you know, I think it's hard to say, reading those instructions, that the jury got any guidance. Just, here it is, the words. Go figure it out. You've got to, you know, give them guidance. This is what you have to come up with. You have to decide this issue, this issue, this issue. But it wasn't, the whole trial wasn't operated that way. Well, I'm trying to focus on the issues that the defendants raised, and specifically the absence of the quid pro quo instruction. And sometimes the government just, when it's got certain, you know, it's got good, solid, I suppose, basic evidence. And instead of just going with that, it goes for almost the whole possible universe. You know, and then these arguments are made. It's, you know, good lawyers, they know how to simplify cases and just go right in for the jugular, what's important, put on the case quickly and risk. And I would submit, Your Honor, that that is what the government did in this case. And the case was tried in a very short period of time. And it was tried on a number of theories. And now that the law has changed, we would submit that it's clear that this case is about bribery. Now, if we should disagree with you, you should go back for a retrial on these counts, correct? Well, I would submit there's no basis to retry the bribery counts. There's no error whatsoever. There's no error in the jury instruction. The honest service. Let's just limit it for a moment. It would be just, on the honest services, if we disagree with your argument, it goes back for a retrial. Correct. As to any count on which the court concludes that there was plain error in those two jury instructions. Okay. And what's the, he's in, Robles is in custody, correct? He is in custody. And counsel just stood there and argued that he should be released if we don't agree with you. Your Honor, we briefed this issue in connection with the bail motion. Right. And we have, I think, vastly different views of what the appropriate sentencing guidelines would be. And then there's also, of course, the question of what sentence the court would impose. So, on the basis of the bribery counts alone, we still don't think that the defendant is entitled to be released from custody. Because we think that the loss amount is at least the amount of the kickback that Garrido got. So, on, you know, with respect to what sentence he would be looking at on those counts alone, I would submit that there's not a basis for this court to grant bail. Could look at a bigger sentence, too. Well, he was sentenced to 120 months, and, you know, the court can certainly take into account all of the conduct. So, you know, I don't see, either based on the guideline calculation or on the 3553A factors, that there's a basis for bail here. Thank you. Well, listen, can I tell you something? Ms. Artson, I wanted to tell you something. Oh, I'm sorry. I didn't realize you were speaking to me and not to Arthur. No, no, no. You're a very, very good lawyer. Thank you, Your Honor. Yeah, and you're probably as good as both of those guys put together. And I'll vote to make you Attorney General any time. Thank you very much, Your Honor. No, seriously. I really, greatly appreciate your vote. No, no. No, no. You're the top. You know, I don't mean to be hard on, especially the trial attorneys who had to try this case under the law that existed at the time. And, you know, they did what they thought was the right thing, but it is very confusing about what happened here. Thank you, Your Honor. Judge Wilson, he was head of the broad section, major crimes, U.S. Attorney's Office. He used to rehearse his jury arguments by bringing in all the night help and custodians and putting them in a jury box and making his arguments to them. You know, an amazing guy. But you had this difficult theory that you were going on, and that's what the government presented instead of a nice, neat, clean indictment and bring on the evidence. But that's got nothing to do with you. Thank you. Well, it's been a minute, Your Honors. On the substance, simply that in order for, to find harmless error, as to defendant Dorito, this court would have to find an instruction that informed the jury that to convict him of honest services fraud, he had to have the mental state required to commit the fraud. Because an aider and a veteran must have the same mental state as the principal. There's not only no instruction, there's not a word in this transcript and in closing argument where the government suggests to the jury that the evidence demonstrated that Mr. Dorito had that mental state. What are you going to do when it goes back? You want a new trial. Where's that going to get you? Maybe I can address that this way. I want to clarify something I said to Judge Pius. He asked what the proper remedy was. I said they can be remanded back, Mr. Dorito's four counts, for a new trial. And Mr. Dorito obviously would have no cause to complain if that was the result and then matters get sorted out in the trial court. I mean, there's some complicated matters. For instance, if this indictment did, as Judge Wilson said, charge conflict of interest and not bribery, then there's a question of whether an indictment on a bribery theory would be time-barred. But those are complicated questions we can leave for the district court. But I did realize that I had made one error. Judge Wilson, in addition to finding that these were conflict of interest charges, found that Mr. Dorito should be acquitted as a matter of law on counts 22 and 27, on grounds separate from the things we're talking about. That is, he found no evidence that Mr. Dorito could have known or reasonably foreseen that there would be these two particular mailings involved here. That's a completely different finding of insufficiency than anything else. And it is true that the court could, even if it found that it was reversing because of the reliance on the conflict of interest theory, could say as to those counts, the government has conceded the invalidity of 27, that as to 22, Judge Wilson was right. There was insufficient evidence to support the knowledge or foreseeability of the mailing. As I say, I'm not greedy. If we were to get a reversal on the four counts, we would certainly be satisfied. But I do have to clarify that Judge Wilson's ruling does set up a separate sufficiency argument as to counts 22. Yeah, that's true. But if you've got this kind of overlap concept, then you do have the word bribery. I don't know about kickbacks, but it's stated in the indictment and in the instructions. So do you think realistically that if he goes back to be sorted out, that the honest services counts are going to be totaled? Well, then it goes back, assuming that the indictment could survive scrutiny and serve as the indictment of future prosecution. The proposition that Mr. Grito, my client, would have to be proven beyond a reasonable doubt to have the specific intent to bribe, the knowledge of the bribery and the quid pro quo and so forth, that would be required to convict Mr. Robles, I mean, that's an extraordinarily defensible position to have from his position. So the reversal on his four counts is a very meaningful one. And if a retrial is legally possible in compliance with the Skilling standard, then all fine and good. But at least then he'd be tried by a jury on what Skilling says is an adequate allegation of criminal conduct. Thank you. Okay, thank you. I really will be less than a minute. The Supreme Court directed us, people in the system, to look to the bribery statutes. They identified the bribery statutes and they told us to look to cases like Ganim, Ganim being the very first one. Ganim says, as explained further below, each of these statutes criminalizes in some respect a quid pro quo agreement to whip a government official's receipt of a benefit in exchange for an act he has performed or promised to perform in the exercise of his official authority. The construction in that case on 666 described the third element that the government must prove on a 666. Is that the defendant acted with a corrupt intent to be influenced or rewarded in connection with some business transaction or series of transactions of the city of Bridgeport itself or one of its agencies. A corrupt intent means the intent to engage in some specific quid pro quo. It continues, and I'm using an ellipsis as I speak. Put another way, a public official acts corruptly if he solicits, accepts, or agrees to accept a personal benefit, at least in part, with the intent to be influenced or rewarded in connection with his performance of an official act. That kind of instruction is totally lacking here and affects the whole case. So you're saying that if a public official says to a third party, If you give me a million dollars, though I don't have the authority to make the particular decision that you would like to see made, I know some other officials and I can go talk to them and convince them to come to a conclusion that is going to be highly beneficial to you. Though it's not a decision that's within my bailiwick that that's not going to happen. I made that argument in my opening brief citing the cases of Chabinski. I do, yes. So what crime would it be? It might be a violation of a state law or a municipal law for somebody to act in such a manner, but it is not a violation of the Honest Services statute and it is not a violation of 666. I do not think it violates any of the bribery statutes. The same would be true if this public official said to a third party, I can't fulfill your request because that's not part of my official duties, but I'll go talk to my friend who is in a position to fulfill that request. Tell them you're a good guy, your thoughts are good, your attitudes and beliefs are pure, and that you'll do a good job. And that the contract, be nice if that contract were awarded to you. And if it is, then you have to give me $250,000 a year for the next 10 years. That's not a violation of federal law either. I would say that again, Your Honor, yes. It may be that the Leahy bill that's being considered will be passed. It may not. The Leahy bill? Congress has, there is a measure, Your Honor, reacting to the Skilling decision, much as there was a reaction to McNally. The principal sponsor is misplaced. The longer I look at you, the more I listen to you, the more I think you're Tom Foley. Is that good? Good. Thank you. Thank you, Your Honor. All right. All right. This is an excellent argument on both sides. I'm glad to have you here. And the court will now recess. I guess we're adjourning. No recesses today. Thank you. All right. This session is adjourned.
judges: Pregerson, Noonan, Paez